The opinion of the court was delivered by
Nici-iolls, O. J.
The defendant in this case was, on the petition of the Oity of New Orleans, ruled by the District Court to show cause why it should not pay the sum of twenty-five hundred and fifty dollars to the city for a license for the privilege of conducting the business of fire insurance during the year 1899, with interest and costs, or be.restrained from carrying on the same until the license, interest, costs and penalties be paid, and why judgment should not be rendered against it for the said amount, with privilege.
The application was based upon allegations that the defendant, a foreign corporation, domiciled in England, was conducting the business of fire insurance on Carondelet street, in said city, without having obtained a license on said business from the Oity of New Orleans for the year 1899, and that their gross annual receipts on said business, for the past year and for the current year, would be more than $170,000.00, and less than $180,000.00. That all persons who conduct any business without license from the City of New Orleans, after March 1st, 1899, were delinquent; that the defendant corporation had not 'paid to the city the amount of license due by it for carrying on said business for the year 1899, and under the terms of section 13 of ordinance No. 14,884, Council Series of said city, there was due and owing to the city by defendant company, the sum of twenty-five hundred and fifty dolllars for a license for carrying on said business for the year 1899, and that the city had a first lien and privilege on its property for the payment of the license claimed.
Defendant for answer pleaded, first, the general issue. It then averred that its liability for a license tax to the Oity of New Orleans, for the year 1899, was limited to the sum of sixteen hundred and fifty *1906 dollars, and that payment of this sum had been duly tendered to the city, but had been and continued to be refused by' the city.
That the city based the license on section^,13 of ordinance No. 14,884, O. S., and that the latter was a copy of the revenue act of the State of Louisiana, No. 171, section 9 of the acts of 1898, and it had proceeded in the rule as if it had the same right to recover a license tax of defendant for the year 1899 as the State had.
That while the State might have authority to exact a license tax of it, for the year on all business done within the State, that it was not liable to the City of New Orleans for a license tax for 1899, except as the business is carried on! by the company within the boundaries of the city, being those of the Parish of Orleans, where alone the company receives the protection of the municipality, and that in so far as said ordinance No. 14,884 is designed to apply, beyond the limits in question, it is ultra vires null and void.
The District Court rendered judgment in favor of the city, against the defendant company, for the sum of sixteen hundred and fifty dollars, without interest or costs, and rejected and dismissed the demand of the City of New Orleans for any amount over that sum.
The City of New Orleans appealed. •
Article 229, of the Constitution of 1898, declares: That “the General Assembly may levy a license tax, and in such case shall graduate the amount of such tax to be collected from the persons pursuing the several trades, professions, vocations and callings. All persons, associations of persons and corporations pursuing any trade, profession, business or calling, may be rendered liable to such tax, except (giving a list of exceptions), * * *
“No political corporation shall impose a greater license than is imposed by the General Assembly for State purposes. This restriction shall not apply to dealers in distilled, alcoholic or malt liquors. The General Assembly shall have authority to provide that municipalities levying license taxes equal in amount to those levied by police juries for parish purposes, shall be exempted from the payment of such parochial licenses.”
Under this authority the General Assembly of the State, by its Act No. 171, classified the different avocations and businesses,, and graded the licenses demanded according- to the class into which each particular corporation, association or person should fall. The fire insurance busi *1907 ness was provided for in this statute under its ninth section, which was as follows:
“Be it further enacted etc., That each and every fire and marine and river insurance, guarantee, surety or indemnity company, society, association, corporation or other organization, or firm, or individual, doing’ and conducting a fire, or marine, or river insurance, guarantee, surety or indemnity business of any kind in this State, or any other insurance business not otherwise provided for, whether such company, society, association, corporation or other organization, or firm, or individual, is located or domiciled here or operating here through a branch, department, resident board, local office, firm, company, corporation, or agency, of any kind whatever shall pay a separate and distinct license on said business for each company represented, and said license shall be based on the gross annual amount of premium on all risks located within this State, and upon risks located in other States, or foreign countries, upon which no license has been paid thereon, as follows, to-wit:
First Glass, when said premiums are three hundred thousand dollars; the license shall be forty-five hundred dollars. * * *
Fourteenth Glass, when said premiums are one hundred and sixty thousand dollars, and less than one hundred and seventy thousand dollars, the license shall be twenty-four hundred dollars. * * *
Nineteenth Glass, when said premiums are one hundred and ten thousand dollars, and less than one hundred and twenty thousand dollars, the license shall be sixteen hundred and fifty dollars. * * *
By the sixteenth section of the act it was provided that “any municipal or parochial corporation in the State shall have the right to impose a license tax on any business, occupation or profession herein provided for; that all such license taxes shall conform to the provisions of Article 229 of the Constitution,” and by the thirtieth section that “a person, firm or .company, having more than one place of business, shall pay a separate license for each place of business.”
The claim of the insurance company, that it should only pay sixteen hundred and fifty dollars to the city for a license, is based upon the contention that of the one hundred and sixty-one thousand, one hundred and fifty-seven dollars of premiums, only one hundred and twenty thousand dollars were for premiums on policies issued in the City of New Orleans.
Appellant says in its brief:
*1908 “Practically the sole contention is whether or not the city has the right in exacting a license tax to count as a basis of the same, the total premium receipts of the office in New Orleans, regardless of the source of such receipts. The city claims that the defendant company comes under Glass Fourteen, while it contends it falls under Glass Nineteen of the license classification. ’That no where in the law is the city obliged to grade her licenses. All it has to do is to be careful that the amount which it requires as a license tax shall not be more than the Statq exacts.”
“In the present instance it is admitted that the defendant has paid the State license amounting to twenty-four hundred dollars. As stated before the city may impose her license under any method she chooses, on any valuation she chooses, and by any grading of receipts she chooses, subject to the sole restriction that in no event shall the amount required by the city for license exceed the amount required by the State."
“The idea, on the other side, seems to be that the city is attempting to charge the defendant for business done outside of the limits of the City of New Orleans, and that the city is incompetent to exact such a charge. The ordinance exacts a license based on the gross amounts of premiums received by the office in New Orleans. There is nothing in the ordinance which authorizes the dividing up of -the receipts under different headings, and, therefore, nothing, which authorizes the company to divide the money it receives in New Orleans into two classes, and call one class “money received from policies issued in New Orleans,” and the other class, “money received from policies issued in Baton Rouge.” The license is not upon the policies issued, but is upon money received,.”
“It makes no difference where the money comes in; the mere fact that it comes to New Orleans and is accounted for in New Orleans and included in the revenues of the company there, makes it taxable by that community. The business is carried on where the business finds lodgment, and the business of the company is lodged where the revenues of the company trickle into the treasury.”
Opinion.
Foreign corporations are prohibited from doing business in Louisiana, except through an agent duly authorized and accredited for the *1909 purposes of said business, and for all purposes connected with license and taxation (Section 8, Act No. 171 of 1898). It is the duty of every insurance company doing business in the State, to file with the Secretary of State, a sworn statement of its yearly business, giving the amount and character of its business transactions, monies received and expended during the year, and such other information as he may require (Section 7, Act No. 171 of 1898). This statement emanates from the home office or domicile of the company. The Legislature having made, by statute, a classification or grading of the licenses of insurance companies — a copy of this statement is sent by the Secretary of State to the State Tax Collector at the domicile of the company, who, upon it, bases the license with which he charges the company in its proper class. The basis of the license is not only upon the gross amount of the premiums received on all risks located within the State, but also upon risks located in other State or foreign countries, upon wh\ch it has paid no license therein.
If the State tax collector of the place of the domicile should make out the license based upon the total amount of premiums from risks located both inside and outside of the State, and the company should contest its liability for the licenses charged, it would be the duty of its officers in order to obtain a reduction there'on, to establish affirmatively that it had paid, and to what extent it had paid, a license outside of the State.
When the authorities of the City of New Orleans were called upon to prepare their licenses for city purposes, their duty was to ascertain from the State authorities what the State licenses were of the different insurance companies having their domicile in the city, so as to make certain that no corporation would be charged in that city for city purposes, a greater license than it was charged with by the State for State purposes, and, having done this, to frame their licenses accordingly.
A license charged by the City of New Orleans against a particular foreign insurance company domiciled therein for the same amount as is charged for a State license against the same company, in the Parish of Orleans is prima facie correct, and the company which undertakes to contest the correctness of the same, upon the ground that the license is based upon too large an amount of gross premiums, assumes (when it admits the total amount of premiums it has earned within the State), the obligation of alleging and proving that it has paid, and to what extent it has paid any other subordinate political corporation of *1910 the State, a license, based upon a portion o£ the earnings upon which the City of New Orleans is basing its demand.
If the company pays no larger an amount than is legally due by it, it is immaterial to it to whom it pays it, if the payment is legal. There is no claim or pretence set up by the defendant that it has paid a license to any subordinate political corporation of the State, other than the City of New Orleans; that any other has made or will make a demand upon it for a license, still less has it presented any showing from which we might be led to belive that it stands in danger of being legally made to pay a license to any political body other than the City of New Orleans.
It by no manner of means follows that because some of the policies of the defendant may not have issued from its office in the Oity of New Orleans (under its theory of what may legally constitute an “issuing” of the same), that that fact should have given rise to ai legal claim against it for a license^ by a corporation other than that of its domicile. It should at least have placed before us all the facts on which it relies; the place where and the circumstances under which the policies attempted to be excepted went into the hands of the parties who issued them; what the capacities of those parties were, and also what were their powers and authority in the premises.
We are of the opinion that the judgment appealed from is erroneous. For the reasons assigned, it is ordered, adjudged and decreed that the judgment appealed from be and the same is hereby annulled, avoided and reversed; and it is now ordered, adjudged and decreed that there be judgment in favor of the City of New Orleans and against the Liverpool and London and Globe Insurance Company for the sum of two thousand, four hundred dollars for a license for the privilege of conducting its business during the year 1899, with two per cent, per month interest thereon from March 1st, 1899, until paid, and costs of both courts, with lien and privilege on its property.
Watkins, J., concurs in the decree.