SOMMERYILLE, J.
The state alleges that the Maryland Casualty Company, a foreign insurance company, is transacting the following kinds of insurance in this state during the years 1912 and 1913: (1) Accident, (2) health, (3) liability, (4) fidelity, (5) surety, (6) i plate glass, (7) steam boiler, (8) burglary and theft, (9) sprinkler, (10) fly wheel, (11) automobile, P. D., (12) workmen’s collective, and (13) physician’s defense — and that it owes seven separate licenses for said 13 kinds of insurance for the year 1913. The state groups the first and twelfth kinds of insurance given .above in one class, for which it demands $120 for a license; for the second (health) it demands $150; for the third, tenth, eleventh, and thirteenth, in another class, it demands a license of $300; for the fourth and fifth (classed together) it demands $150; for the sixth (plate glass) it demands $50; for the seventh (steam boiler) it demands $50; for the eighth (burglary and theft) it demands $150; and for the ninth (sprinkler) it demands $150 — a total of $1,120.
- Defendant answers that it owes but two licenses, aggregating $720. It admits that it owes a license under section 8 of Act No. 171 of 1898, as amended by Act No. 214 of 1906, p. 371. Further that the premiums collected during the year 1912 from accident insurance amounted to $6,329.30, and that the premiums collected on policies issued for workmen’s collective accident, $925.42,' an aggregate of $7,254.15, and that such license is $120, and that it owes a second license under section 9 of Act No. 171 of 1898 of $600 for the business done by it in the 11 other kinds of insurance above set forth, where the total premiums received in 1912 amounted to $47,-636.71.
There was judgment in favor of defendant dismissing plaintiff’s demand, except for the two licenses admitted by defendant to be due by it to the state. Plaintiff has appealed.
The Constitution provides that the General Assembly may levy a license tax, and in such case may graduate the amount of such tax to be collected from the several persons pursuing the several trades, professions, vocations, and callings in this state.
Before imposing license taxes upon the various kinds of business done throughout the state, the Legislature passed laws regulating the business of insurance. In Act No. 105 of 1898, p. 132, provision is made for regulating insurance companies involving life and property, while act No. 114 of 1898, p. 161, has reference to life insurance exclusively, although in section 10 of the latter act life companies are permitted to insure against personal accidents. These acts refer to “subjects” of insurance, “other kinds,” “one class or kind of insurance,” etc., and in section 3, Act No. 105 of 1898, p. 135, it is provided that:
“Any company which shall combine two or more of the subjects specified in section first, of this act, shall have a paid up cash capital equal to the joint sum of the capital required for each subject.”
Defendant company appears to be authorized to issue policies on all the risks indicated in the rule of the state. It is quite clear that the Legislature did not intend by these acts to classify the insurance business into more than two'parts; that with reference to life and accident, and the other to property. It refers to “subjects” of insurance which may be combined in the business of any one company; and in the license act (No. 171 of 1898, p. 387) the same distinction is followed.
*149 In that act, the Legislature has sought to impose upon every person, firm, or corporation engaged in' business a license tax, graduated in the several manners set forth in the act; and it divides the different kinds of business into manufacturers, banking, private banking, commission business, wholesale dealers, retail dealers, liquor dealers, insurance, etc. In section 7 of the act, p. 396, it is provided:
“That every insurance company doing business in this state shall, on or before the first day of March of each year, render to the Secretary of State a report, signed and sworn to by its president and secretary, of its condition upon the preceding thirty-first day of December, which shall include a detailed statement of its assets and liabilities on that day; the amount and character of the business transacted in this state, moneys received and expended during the year, and such other information and in such form as he may require.
“The tax collector shall demand from each compapy applying for license, a certificate from the Secretary of State, certifying to the amount of business transacted during the preceding year by such company as shown by the sworn statement on file in his office, and the license of each company shall be based on such certificate.”
The foregoing section clearly provides “that every insurance company” shall pay a license to the tax collector, based upon a certificate from the Secretary of State showing the amount of business transacted by it during the preceding year, “and the license of each company shall be based upon such certificate.”
But following section 7 are found sections 8 and 9; the former fixes the licenses to be paid by “every life and accident insurance company,” while section 9 provides for licenses to be paid by companies doing a fire, marine, etc., insurance business. It follows, therefore, that, if an insurance company does business under sections 8 and 9, it will be liable for two separate licenses; and defendant in this ease admits owing the state for two licenses.
The evidence shows that the defendant company does no life insurance business, but that it does an accident and a workman’s collective accident business, for which it received during the year $7,254.62 premiums, and for which it owes $120 to the state for a license for the year 1913 under the license act of 1898, as amended by Act No. 214 of 1906, p. 371. There is no controversy over this item between plaintiff and defendant.
The contention of the state is, as before stated, that defendant is doing seven other kinds of insurance business for which it owes seven other separate licenses: For health, $1.50; for liability, fly wheel, automobile, P. D., and physician’s defense, $300; for fidelity and surety, $150;- for plate glass, $50; for steam boiler, $50; for sprinkler, $150; for burglary and theft, $150 — -making a total of $1,120 for the eight different licenses.
The state bases its contention for its demands for the seven several licenses above enumerated upon section 17 of the License Act of 1898, p. 417, reading as follows:
“That when any two or-more kinds of business are combined, except as herein expressly provided for, there shall be a separate license required for each kind of business.”
If the Legislature has made a further division of the insurance business than the one hereinbefore referred to, namely, (1) life and accident, and (2) property insurance, it must be in section 9 of the License Act of 1898, p. 402, which reads as follows:
“That each and every fire, marine and river insurance, guarantee, surety or indemnity company, society, association, corporation, or other organization or firm, or individual doing and conducting a fire, marine or river insurance, guarantee, surety or indemnity business of any kind, in this state, or any other insurance business not otherwise provided for, whether such company, society, association, corporation or other organization -or firm, or individual is located or domiciled here or operating, here, through a branch department, resident board, local office, firm, company, corporation, or agency of any kind whatsoever, shall pay a separate and distinct license on said business for each company represented, and said license shall be based on the gross annual amount of premiums on all risks located within this state, and upon risks located in other states or for *151 eign countries, upon which no license has been paid therein, as follows, to wit.”
There follow 30 classes in which are provided a different license for each class, depending upon the yearly premiums, from a $4,500 license to a $150 annual license; the section closing with the following proviso:
“Provided plate glass and steam boiler inspection insurance companies shall pay only one-third of above rates.”
This proviso does not affect the defendant company for the reason that the premiums collected on the policies issued by it for plate glass and steam boilers must necessarily figure in its gross premiums in its other business, for which a higher license is imposed. This proviso can have effect with reference' to companies doing an insurance business exclusively with reference to plate glass and steam boiler, or either one of them.
Section 9, above quoted, is not free from ambiguity. It might be read, in a condensed form, as follows, and it would still be rather ambiguous, although, when read in 'connection with the history of the imposition of licenses upon insurance companies, it is more readily understood. Shorn of all the explanatory words in the section, it might be read as follows:
“That each and every fire * * * company * # * or firm or individual doing a fire * * * or indemnity business of any kind * * * .whether such company * * * or firm or individual is located or domiciled here or operated here through a branch department * * * or agency of any' kind whatever shall pay a separate and distinct license on said business for each company represented.”
There appear to be two subjects in this section, the company doing business here, and the company operating through an agency of any kind whatever; in either event, whether actually present or represented here, the company or its representative “shall pay a separate and distinct license on said business for each company represented.” The intention of the Legislature is quite clear; that each company doing an insurance business in this state, directly or indirectly, shall pay a license to the state; and whether the insurance is effected by a company domiciled here, or whether it is effected through an organization or individual, the company which issues the policy by itself or through another must pay a license.
We have said that the history of insurance license taxation in this state throws much light upon the present act of the Legislature. It (the Legislature) attempted for a long time, unsuccessfully, to impose upon and collect a license from every foreign insurance company issuing policies on property in this state. The court reports show the varying results on this special legislation. Reference to the decisions in New Orleans v. Rhenish Westphalian Lloyds, 31 La. Ann. 781, New Orleans v. Foreign Ins. Co., 33 La. Ann. 10, and State v. Woods, 40 La. Ann. 175, 3 South. 543, will show that in one instance the license law was found to apply only to state insurance companies, and foreign insurance companies escaped license taxation altogether; and then it was found that the subsequent law imposed licenses only upon the agencies, and each agent paid a license, regardless of the number of companies represented by him; and then the agents were no longer taxed, and the license was finally imposed upon all companies, state and foreign, alike, upon the total amount of business done within the state.
And so the language of section 9, in the endeavor of the legislators to meet all of these contingencies, is somewhat confused; but the intention is quite clear that each company, state and foreign, doing an insurance business in this state shall pay a license for such business; and, if an agent represents several companies, a license is exacted from each company represented. And, if a life or accident company should at the same time issue policies on property, *153 such company must pay two separate licenses, one under section 8 and one under section 9. And, if a company does an insurance of plate glass and steam boiler business exclusively, it shall pay a license therefor, graduated at one-third the rates of a property insurance company; or, if a company issues policies under either one of these two last-named risks exclusively, it must pay a license therefor. The record discloses that such companies are doing business in this state. .
The above interpretation is the one which has been followed by the officers of the state since the adoption of the license act in 1898, and it will not be departed from by the court.
The contention of the tax collector that the Legislature has divided the business of insurance on property into as many different kinds of business as the charter of such company authorizes it to issue policies for cannot be sustained under the language of the license act.
Defendant is liable for a license tax on the business done by it in issuing accident and workmen’s collective accident policies, and for another license for issuing liability, fidelity, surety, plate glass, steam boiler, burglary and theft, sprinkler, fly wheel, automobile, P. D., health and physician’s defense policies.
Judgment affirmed.