(73 South. 244)

No. 21983.

STATE ex rel. EMPLOYERS' LIABILITY CORP., Limited, v. FITZPATRICK, State Tax Collector.

(Oct. 30, 1916. On Application for Rehearing, Dec. 11, 1916.)

*(Syllabus by the Court.)*

1. INSURANCE ☞7—LICENSE TAX—STATUTORY PROVISION.
A state tax for the business of accident, health and workmen's compensation insurance comes under section 8 of Act No. 171 of 1898.
[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 6; Dec. Dig. ☞7.]

2. INSURANCE ☞7 — LICENSE TAX — STATUTORY PROVISION.
A state license tax for the business of liability insurance against loss by the insured comes under section 9 of Act No. 171 of 1898.
[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 6; Dec. Dig. ☞7.]

Provosty and O'Niell, JJ., dissenting.

Appeal from Civil District Court, Parish of Orleans; George H. Theard, Judge.

Proceedings by the State, on the relation of the Employers' Liability Corporation, Limited, against John Fitzpatrick, State Tax Collector. From the judgment, an appeal is taken. Judgment ordered.

Edward Rightor and Eugene J. McGivney, both of New Orleans, for relator. James R. Parkerson and Wm. W. Westerfield, both of New Orleans, for appellee.

LAND, J. [1, 2] The question before us is one of license taxation, and, as stated by the judge a quo, is "whether liability insurance and workmen's compensation insurance come within the provisions of section 9 of Act 171 of 1898, or those of section 8 of the same act." The judge held that such insurance came within the provisions of section 9. In so holding the judge criticized the opinion in the case of State v. Continental Casualty Company, 134 La. 806,[1] in which it was held that insurance of persons against sickness, or bodily injury, or death from accident, came within the provisions of section 8, relating to life and accident insurance companies. In the course of the opinion the court said:

"There seems to have been a purpose in adopting the separate sections 8 and 9, and in stating the different provisions to which' they are intended to apply; one indicating (that is section 8) the insurance of life against accident and the other ills to which men are exposed; the other relating to property, such as fire, marine and river insurance."

In State v. Maryland Casualty Company, 133 La. 146,[2] the court held that insurance companies doing a life, accident, and workmen's collective accident business are liable for the payment of licenses to the state under section 8, and if they combine other insurance business, they are liable to a second license under section 9 of Act No. 171 of

---

[1] 64 South. 757.
[2] 62 South. 606.

1898. In that case this court, inter alia, said:

"Defendant's company appears to be authorized to issue policies on all the risks indicated in the rule of the state. It is quite clear that the Legislature did not intend by these acts to classify the insurance business into more than two parts; that with reference to life and accident, and the other to property."

Our learned brother below states his views as follows:

"Now liability insurance, according to the agreed statement of facts in this case, 'is a contract to indemnify the assured against loss which they suffer because of their legal liability to indemnify employers not included under Act 20 of 1914, or the general public, for physical injuries to the human body, and to which contracts the injured persons are not parties.'

"It is also agreed that workmen's compensation insurance is a contract to indemnify the assured for losses under Act 20 of 1914, which act compels employers to indemnify their employés or the legal dependents of their employés for bodily injuries received from accidents arising out of and in the course of their employment, and to which contracts the employés are not parties.

"Such contracts cannot be classified as 'Insurance against accident and other ills to which men are exposed,' or as 'relating' to property. They are contracts for indemnification against pecuniary loss arising from liability in damages by the insured to third persons not parties to the contract. They are therefore contracts of indemnity insurance and come within the purview of section 9."

Section 23 of Act 20 of 1914 provides that no policy of insurance against liability arising under the act shall be issued unless it contains the agreement of the insurer that it will promptly pay to the person entitled to compensation all installments thereof that may be awarded or agreed upon, and that:

"Such agreement shall be construed to be a direct obligation by the insurer to the person entitled to compensation, enforceable in his name."

Hence, the law itself creates a direct obligation on the part of the insurer to promptly pay to the employés of the insured all installments of compensation that may become due them, by award or agreement, and gives to such employés the right to enforce such obligation in their own names.

Section 26 of the same act provides as follows:

"That every policy for the insurance of the compensation herein provided for, or against liability, * * * shall be deemed to be made subject to the provisions of this act."

It is manifest, under Act No. 20 of 1914, that employés entitled to compensation are the direct beneficiaries of all policies insuring compensation or against liability.

The next question is, What is liability insurance? As defined in the statement of facts, it is a contract to indemnify the assured against losses which he may suffer because of his legal liability to indemnify employés (not included under Act 20 of 1914), or the general public, "for physical injuries to the human body." Such a contract is not an insurance of the life, limbs or health of the assured, or of any other person, but one against any legal liability that may arise from physical injuries to third persons, occasioned by the legal fault of the assured. Such insurance is against a money loss, and must fall under section 9, of the act. In State v. Maryland Casualty Company, supra, this court held that "accident and workmen's collective accident policies" came under section 8, and "liability, fidelity, surety," and other policies came under section 9.

Where the policy of insurance is against liability for a money loss, it certainly does not fall within the class of health or accident insurance, and, therefore, comes under section 9 of the act, which seems was intended to cover all other kinds of insurance. The lower rate of license taxation in section 8 was intended to favor life and accident insurance in all of its forms.

It is therefore ordered that the defendant, state tax collector, issue to the Employers' Liability Assurance Corporation, Limited, a state license tax certificate for the year 1916, for the business of accident, health, and workmen's compensation insurance, on the payment of the tax as fixed by section 8 of

Act No. 171 of 1898; and it is further ordered that said tax collector issue to the said corporation another license tax certificate for the year 1916 on the business of liability, plate glass, burglary and theft and auto and team property damage insurance, on the payment of the tax as fixed by section 9 of said act. It is further ordered that, otherwise, this suit be dismissed, and that the costs be divided.

PROVOSTY and O'NIELL, JJ., dissent.

### On Application for Rehearing, or Amendment of Decree.

MONROE, C. J. Relator suggests the following, as reasons why a rehearing should be granted, or the decree which has been handed down amended to wit:

That, prior to the date at which its license became delinquent, it tendered $1,050, with the request that the collector accept the same without prejudice to the right of the state to proceed, in court, for the collection of such further amount as might be considered due; that the collector declined to receive the amount so tendered, or any amount less than $2,070, whereupon relator at once brought this proceeding, in order to have determined, without delay, the amount for which it is liable; that, according to the opinion and decree handed down, it is held to be liable for $1,320, or $270 more than was tendered and $750 less than the collector was willing to receive; but that relator is unable to determine whether or not it is the intention to cast it for attorneys' fees and interest, and, if so, for what amount; and that the decree should therefore be amended in that respect; that in so amending it the court should consider that the intention of the lawmaker is to impose the penalties mentioned upon those who endeavor to avoid the payment of the licenses due by them, and that the penalties which, at most, can properly be imposed

upon relator, would be such as may be predicated upon the difference (of $270) between the $1,050, which it offered to pay, and the $1,320, which the court found to be due. In support of that view and as authority for the course pursued by it, relator refers to the following language in the opinion of this court in City v. Insurance Co., 52 La. Ann. 1912, 28 South. 270, to wit:

"The proper course to pursue is for the tax debtor, who honestly thinks more is demanded of him than he owes under the law, to pay the amount he holds to be due, protesting it is all he owes, and let the state or municipal corporation to whom the tax is due receive it, not in full of the tax, but on account, reserving its right to demand the remainder, and according to the taxpayer the equal right of resistance as against the demand for the remainder. In such cases, were the taxpayer eventually cast in the suit that followed, he would owe penalties only on such remainder."

Applying the language thus used to this case, we are of opinion that its tender of $1,050 relieved relator of the penalties imposed by the statute, in so far as that amount is concerned, but that the amount tendered having fallen short of the amount which we find to be due, relator is liable for such penalties with respect to the difference, of $270, as also for the costs of court, since its failure to pay or tender the same left the state no alternative but to appear in court in vindication of its right to recover said difference and deprived it of that amount after relator had become delinquent with respect thereto. We may here remark that our reconsideration of the case has suggested serious doubt as to whether this proceeding should not have been dismissed, since relator here prays that defendant be commanded to receive $1,050, as in full payment of the amount due by it; but, as defendant has not applied for a rehearing, and as the application of relator enables the court to so adjust the matter as to avert another lawsuit, it is unnecessary to go into that question.

For the reasons thus assigned, it is ordered

that the decree heretofore handed down be recast so as to read as follows:

It is ordered that the defendant, state tax collector, issue to relator, Employers' Liability Assurance Corporation, Limited, a state license certificate for the year 1916, for the business of accident, health, and workmen's compensation assurance, on payment of the tax as fixed by section 8 of Act 171 of 1898, as amended and re-enacted by Act 214 of 1906, and of the attorneys' fees, interest, and costs as hereinafter specified, and that said defendant issue to said relator another license tax certificate for the year 1916 for the business of liability, plate glass, burglary and theft, and auto and team property damage insurance, on payment of the tax as fixed by section 9 of Act 171 of 1898 and of attorneys' fees, interest, and costs, as hereinafter specified. It is further decreed that, as a condition precedent to the obtention of said license tax certificates, relator also pay to said tax collector, as attorneys' fees, the sum of $27, being an amount equal to 10 per cent. of the $270 referred to in the foregoing opinion; that it pay interest at the rate of 2 per cent. per month on said amount from March 1, 1916, until the payment shall have been made; and that it pay all the costs of this proceeding.

It is further ordered that the rehearing be refused.